is number 251101 Bennett v. OPM. Okay, Mr. Solomon. Good morning and may it please the court. This case is mostly about the statutory construction of 5 U.S.C. 83313, which is the list of things that are included in basic pay of an annuitant. In this case, we have a postal service worker who became disabled. Per the board's guidance, he was entitled to recalculation of his annuity as though it was calculated upon the date he would have retired at 62. There are various things that went into this calculation, but many of the things that should have been considered as far as making him whole as though he's retired at 62 were not considered. Also, we disagree with the OPM's determination regarding the definition of basic pay and what is and is not included. There is a distinction in this case or in the law between prevailing wage employees who earn money on an hourly basis and salaried employees. Though the petitioner is a salaried employee, he was a postal service worker. He was a salaried employee, not a, what is the other category? Prevailing wage. He was not a prevailing wage employee, right? Correct, Your Honor. Okay. But the distinction between the two, I think, is a pretty arbitrary one, and it's not rooted in the statute nor is it rooted in any sort of discernible public policy interest. But you're not challenging the legitimacy of the distinction, are you, between prevailing wage and salaried employees? I don't know exactly what you mean by that, Your Honor. I do understand there's a distinction. Well, in other words, the statutes say prevailing wage employees are entitled to certain calculations of their benefits, and salaried employees are entitled to different calculations. He falls into the second category, and I think indisputably, correct? I don't believe that distinction is made in 8331 as far as... There's a whole raft of statutes, and I'm sure you know better than I do, in which you bump down from 8331 and you go through 8401, and at one point there's a reference to prevailing wage employees, and that ends up being important, and he's not in that category. Yes, that is correct, Your Honor. Right? Yes, that is correct. Okay. But looking at... What is your argument as to how he's entitled to this night pay differential under 8331? Well, if you look at 8331, skipping ahead to that, it says it does not include bonuses. Night differential pay is not a bonus. It does not include overtime, military pay, and just looking at those categories of pay thus far, you can see that those are things that are not modifying kind of the salary for the actual hours contemplated under a salaried employee. Those are hours worked in addition. Bonuses are completely gratuitous and not necessarily a reflection of hours worked, and military pay is a completely separate category of pay. Then it goes on to say that it does not include pay given in addition to the basic pay as fixed by law or regulation, and as far as his entitlement, that is something that is fixed depending on how we look at the word fixed. Right? So as far as scheduled employees, there is a fixed salary for scheduled employees. It says that if you are a... For example, in the general schedule, if you're a GS-5, you make this much money as part of basic pay. But as far as when it says fixed by law or regulation, if we contemplate the fact that this is an employee who worked half his time during the night and half his time during the day, we can look at laws, rules, and regulations and say that based on that, he is entitled to night you cited to us. Actually, it says relationship to basic pay. For general schedule employees, night pay is not basic pay for any purpose. So why is that not... Does that not state the rule that applies to this individual? I'm sorry. Can you repeat the beginning of that? Yeah. The... I'm reading from the fact sheet that you, I believe, were cited in your brief. It may have been cited in the Governor's brief, but I believe it was in yours. And one of the provisions says, deciding, stating what benefits people can assign to basic pay, says night pay is not basic pay for any purpose. And that seems pretty conclusive. Why is that... Why is there an exception to that principle here? Well, so I agree it's not part of basic pay. Isn't that fatal to your claim that he was entitled to credit for night differential? Well, no, Your Honor. Just because 8331 then goes on to list exceptions, and it's, as we argue in our briefs, I don't believe it's an exhaustive list of things that are specifically accepted from it. But as I was just stating with Section 3, it says pay given in addition to the basic pay as fixed by law or regulation. And I... It says it does not include pay in addition to basic pay as fixed by law, except as provided in some parameters, B through L. Yes, Your Honor. But as far as the night differential pay, as I was stating, there's two different definitions, and I didn't get through the entire point I was making. But I was starting off with kind of a concessionary point that if you look at it as fixed by law, rule, or regulation, yes, you can calculate exactly how much you use. Okay, but that's not sufficient. It says except... You have to come within one of the exceptions, right? In B through L. Am I misreading the statute? Well, my point is it doesn't fall under, as far as the first part here, where it says that it does not include pay given in addition to the basic pay as fixed by law or regulation. There is no law or regulation stating that all employees that work for that position, you know, must work at some point in their life. I'm simply not understanding what you're saying. The statute says it does not include pay given in addition to base pay of the position as fixed by law or regulation, except as provided by subparagraphs B through L. So don't you have to fit yourself in one of the exceptions in B through L? Well, Your Honor, I was stating that as far as the first part. It's pay given in addition to the basic pay as fixed by law or regulation. And as I stated, there is certainly an argument to be made that the night differential pay is fixed because it can be calculated, but it's not necessarily something that employees are guaranteed to work or required to work. So it is something that is variable. If he took sick leave that day, he would not receive night differential pay. They could change his work at any time. So I do not believe it falls into these first category of things that you would need an exception to. As I stated, if you look at the other types of things that are not included, things like bonuses, overtime, and military pay, those are things that are kind of unrelated to the salary that the employee receives. But if you look at something like basic pay and then you look at night differential pay, that is something that is modifying the entitlement to basic pay depending on whether you work or you don't work during those night hours. So it's not fixed, and therefore it's not included in the original 8331.3, and therefore it doesn't need to fall under one of the exceptions. That's the funder argument. To move on, though, there's other parts that, as I discussed, he was not given full consideration of the amount of money he would have been making upon retirement at 62. His position was automatically recategorized to a higher-level position, higher-rated position, and that wasn't contemplated in the final wage determination. This is your High 3 argument, right? Yes, Your Honor. Where you're saying that he should have been given High 3, which is at the rate he would have been paid had he stayed on the job as opposed to retiring on disability through 2021 or whenever it was, and that at that point, in addition to the COLAs, which he did get credit for, he would have had promotions and would have moved up so that his High 3s should be calculated according to the last three years before 2021, before his retirement age. Is that correct? I wouldn't use the word promotion as far as the step increases, so as part of their employment. He would have had a higher salary had he kept working, but he didn't. So they calculated his High 3 by the last three years that he actually worked, correct? Yes, Your Honor, and I believe that if it wasn't something that was an automatic entitlement, then that wouldn't be contemplated. If that was something that was, you know, we're not arguing that as a result of exemplary work, he would have received, you know, promotions based on applying for new jobs. His position was automatically reclassified in the salary increase. So if you look at the board's case law saying that, you know, you're entitled to payment as though you retired at the date of 62, if you calculated based on the idea that he would have retired at 62 in the same position, which was, you know, reclassified, and then he's also entitled to automatic step increases, you know, every so often as kind of scheduled out in the briefs, that he really didn't receive money as though he retired at 62. But had he kept working, he would have had a larger retirement, is what you're saying? Yes, Your Honor. Right. But it seemed to me, reading the statutes, that the calculation of the high three is the calculation of the highest three years in which you worked, not the highest three years in which you would have worked had you continued to work until your time for retirement. Yes, Your Honor. I don't see where there's a statutory provision that's contrary to that view of the matter. I would agree that I don't think there's anything over there, but just reading it in concert with the MSPB's decisions interpreting that statute, saying that you have to interpret it as though the employee is entitled to pay as though they had retired at 62, that's kind of, we're applying that reading of the statute in saying that he would have been entitled to a greater amount. And which MSPB cases say that you calculate the high three according to the last three years of his disability by calculating what he would have been paid had he not been retired on disability? I don't believe there's any MSPB cases that include that first part of what you just stated. There are MSPB cases as cited in our brief, and I apologize if I don't have the citation on the front of my mind here, but there are cases that state that you're entitled to retirement as though you had continued working until 62. That's how it's calculated. And I don't believe that we should be essentially penalizing employees for taking disability and retirement and not giving them the compensation they would have received had they stayed in the position, not done anything exemplary, just maintained doing exactly what they did and received the increases in salary they were naturally entitled to. And on that note, as far as the public policy, I think if we're looking at how to read 8331, it should be put through the lens of what is the difference between a prevailing wage employee and a salaried employee. I don't know if it's a perception that these employees are more blue-collar or they make less money, but the idea is that they should be entitled to the pay that they actually worked for and received based on the market rate. And for night differential pay, for example, if you were to go to the private sector, people are paid more for working the night shift. That's just part of it. The prevailing wage employees, if I understand it, are people like VA doctors, and every now and then the VA looks out at the universe of physicians in the same specialties and decides, well, the prevailing pay for doctors in that specialty is X, and they adjust the doctors that they have. That's a very unusual category, I think. Is that not right? I believe there are other categories of prevailing wage employees. There are others, but I think it's pretty limited. Of the many civil servants that are out there, most of them are not prevailing wage employees, I think it's fair to say. Most of them aren't, but there's also prevailing wage employees, I believe, on the lower end, especially for the part-time employees that work hourly. They charge them hourly. There's also full-time employees that in certain positions are charged hourly, including both appropriated and non-appropriated funds positions. But as far as the VA doctors, for example, that brings up an example, where they're allowed to look at the competitive rate for VA doctors and adjust salaries accordingly, and they can look at what people are making out there in the market. So if you have somebody like a night-working physician, they can look and just adjust your pay based on the idea of how much would this person be making if they were out in the private sector, and that contemplates the inclusion of something like night differential pay right into the salary. And there's no distinction as to why that should be considered for that type of employee, but not for somebody like Mr. Bennett, who's working for less than $50,000 as a postal worker, became disabled and then went on disability retirement and is now seeking an annuity. The fact that his annuity was recalculated and it actually decreased after being out of work and having all those COLA increases calculated in, I think just kind of shows the injustice of looking at it in terms of technically your salary on paper was this, even though you were making much more, and we are going to give you an annuity based on not your services that you're performing and the market rate of those, but on some arbitrary number of what we think the position is entitled to prior to those types of adjustments. Okay. I think we're out of time. We'll give you two minutes for rebuttal. Okay. Thank you, Your Honor. Ms. Gissack. Thank you, Your Honor. May it please the Court. OPM here clearly demonstrated what its calculations were for the redetermination of Mr. Bennett's retirement annuity, and we respectfully request that the decision affirming that calculation be affirmed. Specifically with respect to the question of night shift pay, I won't reiterate too much of what the Court just went over, but looking at 5 U.S.C. 8331.3 where it explains all of the aspects of basic pay, I would just draw the Court's attention briefly to the inclusion in the list of premium pay under 5 U.S.C. 5545C.1, which is a specific type of premium pay related to regular standby pay that is included as part of an annual salary. That is the same statute, 5545A, that includes entitlement to night shift pay for pay works during that period. The statute describing basic pay does not specifically include Section A of that statute, which is sort of regular night shift pay. It only includes that one specific type of premium pay that is not at issue here. So that is further evidence that this definition of basic pay does not include all premium pays and specifically night shift pay in this case. Give me the statutes that you just walked through again, if you would, because I didn't catch them the first time. Certainly, Your Honor. My apologies. So 5 U.S.C. 8331.3 is the definition of... That's basic pay. Yes, basic pay. Includes and then A through I. Yes. And then in that list of exceptions, apologies, I lost it. Under 3C, this is basic pay includes, and then down to C, premium pay under Section 5545C1 of this title. This is also for reference. We cited the fine case in our brief. It's a very similar case. This is a statute that was referenced in that as well. So 5545C1 is a very specific type of premium pay. In 5545, there is a separate section that covers night pay, that's A, which is not called out in that list of inclusions. And we do believe that the sort of catch-all exclusion of pay given in addition to the base pay for the position as fixed by law or regulation would cover your typical types of premium pays, like night shift differential, as an exclusion to basic pay. What about his argument about the automatic step increases? Yes, Your Honor. So it's premised on the position, I believe, that the pay, the annuity should be calculated as though you had worked until age 62. And that is not what the statute says, and particularly if the court would look at 5 U.S.C. 8452B, which describes how that recalculation, the redetermination is to be done. It refers to the high three, and then it refers to the calculation that would be done under 8415 for someone who was just retiring generally. And the only allowance that is made beyond that is one for the adjustment to the creditable service. That is, to the service that you actually worked, we will add the years that you were on disability retirement to get a higher number for the determination of your rate. So he gets the years, but he doesn't get the increase that he would have gotten had he stayed on the job. That's correct, Your Honor. And then specifically, you also get adjustments for what we've been referring to as COLA, as well as the cost of living adjustments, specifically under 8462B. And those are very specific as to price index adjustments annually that are determined by OPM. Is the agreement that it refers specifically to COLA, but not to step increases? Yes, Your Honor. So those are the two adjustments that are stated in that statute. And the second one, I lost track of my subsection, so 8452B, 2, big B, little Roman numeral 2, refers to adjustments under 8462B, and then 8462B specifically refers to this price index, the percent change in the price index year to year, and that's a specific calculation based on that index. It doesn't apply to anything else like step increases, like promotions or anything like that. The only other thing I want to say, Your Honor, is I appreciate the policy arguments that Mr. Bennett has raised in this case, both in the briefing and before the court. Those are arguments that should be addressed to Congress to change how these calculations are done. They are not based in the statutory text that we have here. And so for purposes of this particular recalculation, we don't believe they would apply. Unless the court has any further questions. Okay, thank you. Thank you, Your Honor. Mr. Salamone. Thank you, Your Honors. I just wanted to briefly include the citation that was requested earlier. There's a case in the reply brief at page 4. Unfortunately, I don't have the ECF numberings, but page 4, as I've numbered them. And it includes a case, Moore v. OPM, and it quotes something that I think I found in more than one MSPB case, and I can probably provide further citations, but it says, upon attaining age 62, the appellant's annuity should have been recomputed using an amount that represents the annuity she would have received if she continued working until the day before her birthday and retired under the non-disability provisions of FERS. I just wanted to very briefly go into the argument regarding sick leave and retroactivity. There is the National Defense Authorization Act, which did provide for the recomputation of annuity. The calculation was that he wasn't entitled to any sick leave, quite apart from the question of whether it was barred. Excuse me? There was a calculation. The OPM calculation showed he wasn't entitled to any sick leave, so the whole question of whether you could get sick leave as part of basic pay is kind of moot, right? Well, Your Honor, as we forward in the briefs, I think one of the issues was that the board was not receptive to the argument. They stated that it was barred, and also Mr. Bennett attempted to put somebody from OPM on the stand and question him on this, and that was denied. Well, no, wait a minute. On the person that he wanted to put on the stand, I think that was the agency representative, right? That was his opposing counsel. He wanted to cross-examine opposing counsel, and the board presiding judge said no, which I would think that would be as a matter of course. You don't cross-examine your opposing counsel. Well, Your Honor, it's my understanding that that was Ms. Bell, right, who was the agency representative. Yes, Your Honor. He wanted to cross-examine her. Yes, Your Honor. So that was after the agency had refused to provide an official point of contact from OPM as to answer how the calculations were provided? But he told the AJ that he didn't need any witnesses. I believe that's going to be more time than I have to get into. I believe that's somewhat covered in the brief, but I just wanted to end. He did say that to the AJ, right? Yes. All right. But I just wanted to end with the fact that we believe based on the same logic that the annuities calculated as though they continued working to 62, the retroactivity under the ADA would not apply. Could I get the citation to that Moore against OPM case that you referenced? Yes, so that's MSPB number DA-0845-22-0432-1-1. And was that, that's not an opinion by the board, I take it. Was that an opinion by an administrative judge? Correct, Your Honor. Okay. Okay, thank you. Thank both counsel. The case is submitted.